# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-IA-02382-SCT

*CITIFINANCIAL, INC., ET AL.*

*v.*

*YVONNE MOODY, ET AL.*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/28/2003 |
| TRIAL JUDGE: | HON. BILLY JOE LANDRUM |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | MARCUS DOUGLAS EVANS |
| | ROBERT D. GHOLSON |
| | DANIEL D. WALLACE |
| | JOHN R. CHILES |
| | RICHARD CARLTON KELLER |
| | REID S. MANLEY |
| | ROBERT FRANKLIN SPRINGFIELD |
| | KERMIT LAGUIN KENDRICK |
| | ELIZABETH ERIN BOSQUET |
| ATTORNEYS FOR APPELLEES: | PERRY MICHAEL YANCEY |
| | ROBERT GORDON METHVIN, JR. |
| | JAMES MICHAEL TERRELL |
| | EUGENE M. HARLOW |
| | NORMAN GENE HORTMAN, JR. |
| | CHRISTOPHER BRIAN McDANIEL |
| NATURE OF THE CASE: | CIVIL - TORTS-OTHER THAN PERSONAL INJURY & PROPERTY DAMAGE |
| DISPOSITION: | REVERSED AND REMANDED - 03/03/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, C.J., EASLEY AND CARLSON, JJ.**

**EASLEY, JUSTICE, FOR THE COURT:**

¶1. This case involves a motion to sever and transfer venue for a lawsuit involving alleged "insurance packing", "loan flipping" and other alleged deceptive business practices. This Court granted in part and denied in part the interlocutory appeal. On appeal, the argument between the parties concerns whether joinder is permissible under M.R.C.P. 20. We find that the Defendants properly preserved their issue for appeal and, thus, the issue of a procedural bar is without merit. In addition, we find that the trial court abused its discretion by joining four diverse Plaintiffs and the Defendants and denying the motion to sever and transfer venue in this action. Plaintiffs failed to satisfy the "same transaction and occurrence" test of M.R.C.P. 20. Accordingly, we reverse the circuit court's order and remand so that each case should be transferred to the appropriate jurisdiction where each Plaintiff could have brought his or her claim without reliance on an improperly joined plaintiff.

## PROCEDURAL HISTORY

¶2. On September 18, 2002, sixty-one plaintiffs filed suit against Commercial Credit Corporation, Commercial Credit of Mississippi, Inc., and Citifinancial, Inc., formerly known as Commercial Credit and Commercial Credit of Mississippi Corporation, Citigroup, Inc., and CitiFinancial Credit Company, hereinafter known as Defendants. The Plaintiffs had loans with Defendants. The complaint alleged that the Plaintiffs were charged for credit life, credit disability and credit property insurance by Defendants. Prior to filing a motion to sever and transfer venue, the original sixty-one plaintiffs were reduced to five plaintiffs. The other fifty-six plaintiffs were severed into an arbitration group by agreement of the parties.

¶3. On September 26, 2003, Defendants filed a motion for summary judgment on the remaining five plaintiffs' claims. On September 29, 2003, Defendants filed a motion to sever

2

and transfer venue. The Circuit Court of the Second Judicial District of Jones County, the Honorable Billy Joe Landrum, presiding, denied the motion to sever and transfer venue on October 29, 2003. On the same day, Defendants petitioned this Court for interlocutory appeal. On November 6, 2003, this Court granted in part and denied in part an interlocutory order to stay the proceedings pending a review of the circuit court's decision to deny Defendants' motion to sever and transfer venue. *See* M.R.A.P. 5.

**FACTS**

¶4. On September 18, 2002, sixty-one plaintiffs filed suit in the Second Judicial District of the Circuit Court of Jones County, Mississippi. The complaint alleged numerous allegations. In specific, the complaint alleged that "[c]ontrary to law, Defendants required credit life insurance, credit disability, personal property insurance and/or other insurance in connection with their loans to Plaintiffs." In addition, the complaint stated that "[t]hese insurance products were represented by Defendants as a necessary part of the loan package, with all or some of these insurance products misrepresented by Defendants as a necessary prerequisite for the extension of the credit and receipt of the loan." The Plaintiffs also alleged "insurance packing" on the part of the Defendants "by increasing Plaintiffs' debt by 'padding' or 'packing' the amount financed through the sale of insurance products." The Plaintiffs claimed that the Defendants engaged in "loan flipping" and that the "Defendants would solicit existing customers to refinance their existing loans at a time when it was financially beneficial to Defendants and financially detrimental to customers." The Plaintiffs also claimed that when their loan was flipped it would result in the payment of "excessive and unnecessary loan fees and higher interest charges on the new loan." The Plaintiffs alleged that due to the common

3

practices of packing credit insurance into personal loans and refinancing personal loans, the Defendants breached a fiduciary duty , breached the implied covenant of good faith and fair dealings, engaged in fraudulent and negligent conduct in carrying out the loan transactions and conspired to do the wrongful acts.

¶5.    Of the original sixty-one plaintiffs, only four were residents of Jones County, Mississippi, those being Yvonne Moody, Archie Hathaway, Mike Brady and Rhonda Brady. These four original plaintiffs are no longer party to this suit because they were included in the fifty-six plaintiffs that were severed and agreed to arbitration.    Of the five remaining plaintiffs in the lawsuit, L.J. Lockett (Lockett), Esau Singleton (Esau), Wanda Singleton (Wanda), Tina LeBlanc (LeBlanc) and Debra Hudson (Hudson), none are residents of Jones County, Mississippi.[1]    However, plaintiff Lockett did obtain a loan in Jones County, Mississippi.    The Defendants are not domestic corporations and are not domiciled in Jones County, Mississippi.


¶6.    Between the five remaining plaintiffs, eight loan transactions occurred in four different branches of Defendants' offices.    Lockett took out two loans in 1994 and 1995 at a Commercial Credit branch in Laurel, Mississippi.    Esau took out a loan in 1994 at a Commercial Credit branch in Hattiesburg, Mississippi.    Wanda took out two loans in 1994, one at her home in Leakesville and another at a Commercial Credit branch in Hattiesburg, Mississippi.    LeBlanc took out a loan in 1994 at a Commercial Credit branch in Hattiesburg, Mississippi. Hudson took out two loans in 1994 at a Commercial Credit branch in Greenwood, Mississippi.

---

[1] Esau and Wanda Singleton are married.

4

¶7.   Each loan document contained disclosure language.   The loan agreements also provided that each Plaintiff the option to cancel the insurance.

¶8.   The Circuit Court of Jones County, Second Judicial District denied the Defendants' motion to sever and transfer venue.   Following that ruling, the Defendants filed a petition for interlocutory appeal to this Court which was granted in part and denied in part.   The interlocutory appeal order stated in part:

> Citifinancial seeks interlocutory review of the trial court's decision to deny the defendants' motion for a severance of claims which, Citifinancial alleges, were mis-joined and filed in Jones County.   The panel finds that the **petition should be granted as to the claims of Esau Singleton, Wanda Singleton, Tina LeBlanc, and Debra Hudson.**   All trial court proceedings as to the claims of those parties are stayed pending resolution of the interlocutory appeal.   The panel further finds that the **petition should be denied as to the claims of L.J. Lockett** and that the trial court proceedings on his claim should not be stayed.

(emphasis added).   Therefore, the claims by Lockett are not part of this appeal as this Court determined that his claims are denied.

## DISCUSSION

¶9.   On interlocutory appeal, the following issues were raised for this Court's review:

> **I.     Whether the Defendants are procedurally barred from raising issues on appeal that were not presented to the trial court.**
> **II.    Whether the Plaintiffs were misjoined pursuant to M.R.A.P. 20 and whether the Plantiffs' claims should be severed pursuant to M.R.A.P. 21 and transferred to the proper venue according to Miss. Code Ann. § 11-11-3.**

> **I.     Procedural Bar**.

¶10.   The Plaintiffs argue that the Defendants are procedurally barred.   The Plaintiffs contend that the Defendants allegedly failed to argue that the application of M.R.C.P. 20 required a

5

finding of misjoinder. The Plaintiffs maintain that while the Defendants argued that the claims do not satisfy the "same transaction" requirement of M.R.C.P. 20 and do not involve a common question of law to this Court, these arguments were not made to the trial court. The argument presented to the trial court focused on joinder being an unconstitutional encroachment on statutory venue rights and that the trial court has discretion and should sever mass joinder claims. Therefore, the Plaintiffs assert that the trial court was under no obligation to consider a joinder analysis pursuant to M.R.C.P. 20 and commonality arguments and it properly exercised its discretion by denying the motion to sever and transfer venue.

¶11. The Defendants claim that the written motion to sever and transfer venue contained and raised the issue of misjoinder. By simply filing the motion pursuant to M.R.C.P. 20, the Defendants assert that the issue of misjoinder is preserved, regardless of the topics orally argued to the trial court.

¶12. Indeed, the motion to sever and transfer venue had two issues. The first issue is titled "This court should put an end to venue and joinder manipulation by exercising its discretion under Rule 20 and severing the non-Jones County Plaintiffs." The second issue is titled "This Court should exercise its discretion under Rule 20 and sever and transfer the non-Jones County Plaintiffs." In the second issue, the Defendants assert, in part:

> According to their Complaint, only four (4) of the Original Plaintiffs had any connection to Jones County, and four (4) of the five (5) remaining Plaintiffs reside in what Plaintiffs' counsel undoubtedly perceive to be "less plaintiff friendly" jurisdictions. Of course now the only remaining connection among the Plaintiff's to Jones County is an individual purchase of a policy within the county. Plaintiffs from these other counties picked Jones County as their venue of choice, even though Defendants do not reside in Jones County and Plaintiffs otherwise had no connection to Jones County.

6

...Under Rule 20 and 21, and under holdings of numerous Mississippi Supreme Court cases, this Court has the absolute discretion to sever and transfer plaintiffs when justice so requires. This Court should put an end to venue and joinder manipulation and exercise its broad discretion under Rule 20 to declare the plaintiffs **misjoined** and sever and transfer the claims of all plaintiffs who are nonresidents of Jones County to their respective proper venues....

The trial court conducted a hearing on the Defendants motion to sever and transfer. The motion requested that the trial court sever and transfer venue based upon M.R.C.P. 20 and 21. This Court finds that the Defendants raised the issue of misjoinder in the written motion to sever and transfer venue, and it is properly preserved for appeal. Therefore, this issue is without merit.

## II. Joinder.

¶13. This Court granted the interlocutory appeal for four Plaintiffs: Esau, Wanda, LeBlanc and Hudson and denied interlocutory appeal as to Lockett. The record reflects that Lockett resided in Wayne County, however, he completed loans transactions in Jones County, thus, making Jones County a proper venue for his lawsuit. While Lockett is not part of this appeal, we will nevertheless provide information concerning Lockett's actions since his proper venue in Jones County is intertwined with the other Plaintiffs' theory of allowing their cases in Jones County.[2] The following chart is an outline of each Plaintiff's loan history:

| Plaintiff | loan no. | type of loan[3] | home county | loan location | date of loan | loan officer |
|---|---|---|---|---|---|---|

---

[2] Citifinancial concedes in its brief that Jones County is the proper venue for Lockett's case. "In this case, Jones County is the proper venue only for the claim of Plaintiff L.J. Lockett. As a result, his claim should be severed and remain in Jones County Circuit Court."

[3] Credit life = CL; Credit disability = CD, Personal Property insurance = PPI

7

| Lockett | 1 | CL CD | Wayne | Laurel Jones Co. | 1994 | unknown |
|---|---|---|---|---|---|---|
|  | 2 | CL CD PPI |  |  | 1995 |  |
| **Esau** | 1 | CL CD PPI | Greene | Hattiesburg Forrest Co. | Nov. 1994 | unknown |
| **Wanda** | 1 | unknown | Greene | Leakesville Greene Co. | Pre-1994 | unknown |
|  | 2 | CL CD PPI |  | Hattiesburg Forrest Co. | 1994 | unknown |
| **LeBlanc** | 1 | CL CD PPI | Forrest | Hattiesburg Forrest Co. | 1994 | unknown |
| **Hudson** | 1 | unknown | Leflore[4] | Greenwood Leflore Co. | Pre-June-1994 | unknown |
|  | 2 | CL CD PPI |  | Greenwood Leflore Co. | June 1994 | unknown |

¶14.   The trial court denied the Defendants' motion to sever.   In its ruling, the trial court simply stated that the Defendants' motion to sever and transfer venue having been heard and considered by the court "finds that the motion is not well taken, and should be denied."   The Defendants' motion to certify the decision for interlocutory appeal and the motion to stay were also denied.

---

[4] Hudson now lives in Arkansas, but at the time of the loan transactions, she lived in Itta Bena, Mississippi.

¶15. "The standard of review regarding joinder and venue is abuse of discretion." *Janssen Pharmaceutica, Inc. v. Armond*, 866 So.2d 1092, 1095 (Miss. 2004) (citing *Ill. Cent. R.R. v. Travis*, 808 So.2d 928, 931 (Miss. 2002)). *See also Am. Bankers Ins. Co. of Florida v. Alexander*, 818 So.2d 1073, 1075-76 (Miss. 2001). Abuse of discretion is found where joined parties fail to satisfy the two part requirement of M.R.C.P. 20(a). *Armond*, 866 So.2d at 1097.

¶16. Mississippi Rule of Civil Procedure 20(a) states that "joinder is proper if (1) the claims arise from the same transactions and occurrences and (2) the claims share a common issue of law or fact." *Janssen Pharmaceutica, Inc. v. Bailey*, 878 So.2d 31, 46 (Miss. 2004).

¶17. The Comments to M.R.C.P. 20 state, in part:

> Rule 20(a) imposes two specific requisites to the joinder of parties: (1) a right to relief must be asserted by or against each plaintiff or defendant relating to or arising out of the same transaction, occurrence, or the same series of transactions or occurrences; and (2) some question of law or fact common to all the parties will arise in the action. *Both of these requirements must be satisfied in order to sustain party joinder under Rule 20(a).*

(emphasis added). This Court amended the comment to M.R.C.P. 20 on February 20, 2004. The revised comment states that "[t]he phrase 'transaction or occurrence' requires that there be a *distinct litigable event* linking the parties." *Bailey*, 878 So.2d at 46 (emphasis added).

¶18. The Defendants argue that the Plaintiffs' cases should not be joined because (1) the loan transactions are not part of the "same transaction" or series of transactions, and (2) the claims involve no common questions of fact and only limited common questions of law. The Defendants argue that the loan transactions occurred over a period of a few years, in four

different cities with different plaintiffs, at different branches and with different communications or no communications with various loan officers.

¶19. Furthermore, different items of security were provided by each plaintiff for collateral and varying rates of interest were charged. As the chart provided indicates, Lockett took out two loans in 1994 and 1995 at a Commercial Credit branch in Laurel, Mississippi. This Court also has before it four separate depositions from each Plaintiff.

¶20. Esau took out a loan in 1994 at a Commercial Credit branch in Hattiesburg, Mississippi. He did not remember anyone speaking to him about insurance when he signed for the loan, but he only stayed long enough to sign the loan. He only remembered that the loan officer was a man, and he did not know the man's name. Esau stated that he did not read the loan documents, but nobody prevented him from reading them. Esau thought it was wrong that Commercial Credit did not tell him anything about the insurance, but he did not believe that anything was hidden from him. Esau admitted that had he read the loan documents, he would have known about the insurance. He never went to a doctor for any stress symptoms, although he had some sleepless nights.

¶21. Wanda took out two loans, one at her home in Leakesville and a second loan in 1994 at a Commercial Credit branch in Hattiesburg, Mississippi. The first loan was taken out in connection with the sale of a Kirby vacuum cleaner at her house. Wanda was not exactly sure of the circumstances, but it appeared that the man that sold the vacuum cleaner to her at her home also provided a loan from Commercial Credit. She made the vacuum cleaner payments to Commercial Credit, however, she never went to a branch office to get the loan. Wanda did

not know whether she purchased any insurance with that loan and she no longer has any loan documents.

¶22.    When Wanda took out a second loan, she went to the Commercial Credit branch in Hattiesburg. This loan was a joint loan with her husband, Esau. She did not remember who she dealt with at Commercial Credit to get the loan. She never asked anyone at Commercial Credit to explain insurance premiums to her. She was worried and stayed awake at night thinking of the money she lost and that she had to pay more money. Wanda also stated that Commercial Credit did not sit down with her and explain the credit life insurance. She also did not know or remember who she dealt with in connection with the second loan at the Commercial Credit branch. Wanda could not remember if she asked any questions concerning the loan. Four television sets, one VCR, a stereo system and a satellite dish were used as collateral for the loan. Wanda and Esau paid an interest rate of 20.99% the loan.

¶23.    LeBlanc took out a loan in July, 1994, at a Commercial Credit branch in Hattiesburg, Mississippi. She thought that the person that she dealt with at the Hattiesburg branch was named Kevin. She had no recollection of speaking with any Commercial Credit employee about credit life insurance, credit disability insurance or property insurance on the day she signed her loan. She does not remember reading the loan documents prior to signing them. She thought a female employee went over the loan documents with her. Nobody prevented LeBlanc from reading the loan documents. She used a television set, a VCR, various tapes, a lawn mower and artwork for collateral. She does not contend that Commercial Credit tried to hide anything from her. LeBlanc also stated that she suffered no mental anguish as a result of having the loan. LeBlanc did not like the fact that the property insurance was included in her

11

payments, however, she had no problem with the credit life insurance and the credit disability insurance. She paid an interest rate of 27.52%.

¶24. Hudson took out two loans at a Commercial Credit branch in Greenwood, Mississippi. Hudson was angry about the loan situation, however, she never sought medical attention for treatment of mental anguish nor suffered any physical injury. She was unsure if she purchased insurance on the first loan. The second loan, which Hudson still had a copy, had insurance on it. She believed it was a good idea to purchase credit insurance on a loan. Hudson believed that Commercial Credit overcharged her, however, she was told that taking out credit insurance would increase her chances of getting a loan. She did not remember the interest rate on her first loan nor if she purchased insurance. On her first loan, Hudson only remembered that she dealt with a man in connection to getting the loan. She did not remember if anyone explained the loan documents to her for the first loan. Hudson stated that she was not making any type of claim in connection with her first loan.

¶25. For the second loan, Hudson only remembered that she dealt with a man and did not know the interest rate. Both loans were taken out at the same branch of Commercial Credit in Greenwood, Mississippi. Hudson did discuss the purchase of insurance and the Commercial Credit employee went over the loan documents prior to Hudson signing them. Part of the money received for the second loan was used to pay off LeBlanc's first loan. She paid an interest rate of 27.52%.

¶26. The Defendants claim that each transaction occurred at a different time and location, involving different loan officers and circumstances. The only "common fact" was that each Plaintiff purchased credit insurance, however, the Defendants argue that this one fact is not

12

enough to satisfy the same transaction requirement of M.R.C.P. 20. Furthermore, the Defendants contend that the cases should have been brought individually because the alleged fraud claims are unrelated.

¶27. Defendants also argue that the claims do not involve a common question of law and fact in order to meet the requirement of M.R.C.P. 20. Again, the Defendants maintain that the circumstances of each individual Plaintiffs' loan transaction are different. As an example, the Defendants point out that whether a loan officer in Laurel made misrepresentations to a Plaintiff has nothing to do with whether a different loan officer made misrepresentations in another Commercial Credit branch to a different Plaintiff. As for the common question of law, even though the basic elements of common law fraud are the same in each case, the Defendants argue that the application of those elements may vary depending on the facts of each individual case.

¶28. Finally, the Defendants claim that *Janssen Pharmaceutica, Inc. v. Armond*, 866 So.2d1092 (Miss. 2004) and *Janssen Pharmaceutica, Inc. v. Bailey*, 878 So.2d 31 (Miss. 2004), are similar to this case. Like *Armond* and *Bailey*, there are no transactions or occurrences that connect the Plaintiffs and justify joinder pursuant to M.R.C.P. 20. Apart from the fact that the Plaintiffs' claims involve credit insurance products from Commercial Credit, the similarities end there with no nexus of common operative fact. Therefore, the Defendants claim that Esau, Wanda, LeBlanc, and Hudson's claims should be severed from Lockett's case and transferred to Forrest and Leflore Counties.

¶29. The Plaintiffs argue that they meet the same transaction and occurrence test of M.R.C.P. 20 and that there are common questions of law in this action. The Plaintiffs argue

that ***American Bankers Ins. Co. v. Alexander***, 818 So.2d 1073 (Miss. 2001), ***Prestage Farms, Inc. v. Norman***, 813 So.2d 732 (Miss. 2002), and ***Illinois Central R.R. v. Travis***, 808 So.2d 928 (Miss. 2002), are controlling in this case. The Plaintiffs claim that each of them had personal loans from Commercial Credit and purchased credit life, credit disability and property insurance. The Plaintiffs assert that the complaint set out the same claims, the same pattern of conduct, the same type of credit insurance products on the same type of personal loans, the only difference is the dollar amount charged on the premium payments.

¶30. In addition, the Plaintiffs claim that their loans involved the same wrongful conduct, the Defendants had a common scheme or course of conduct concerning the transactions, the acts and omissions of the Defendants gave rise to the Plaintiffs' claims being common to all Plaintiffs and constituted the same series or occurrence and distinct litigable event and the loans had the same standardized language. Therefore, the Plaintiffs claim that the claims are properly joined pursuant to M.R.C.P. 20 and the trial court did not abuse its discretion in denying the Defendants' motion to sever and transfer venue.

¶31. The Plaintiffs also argue that there are questions of law common to all Plaintiffs. In fact, the Plaintiffs argue that the Defendants, as grounds for summary judgment, asked the trial court to apply the same legal argument to all claims brought by the Plaintiffs and that dismissal should be based on all the claims being the same. Since the Defendants alleged this in the summary judgment motion, the Plaintiffs argue that the Defendants cannot now claim that there is no question of law or fact or a distinct litigable event common to all parties in this case. The Plaintiff contends that the Commercial Credit loans all involved the same fraudulent scheme or course of conduct, breach of a fiduciary duty, and negligent.

14

¶32.   This Court has recently held in *Armond* that multiple plaintiffs and defendant doctors were improperly joined due to a failure to meet the same transaction and occurrence test in M.R.C.P. 20.  *Armond*, 866 So.2d at 1102. Likewise in *Bailey*, this Court reviewed a Propulsid medication case finding improper joinder because there was no single transaction or occurrence connecting the multiple plaintiffs, who each had unique medical histories and medical injuries. *Bailey*, 878 So.2d at 48-49.

¶33.   In the case sub judice, each Plaintiff took out a loan on a different day and a different time from one another.[5]   Wanda had some sort of loan from Commercial Credit in connection with the sale of a vacuum cleaner prior to 1994, Wanda and Esau had a joint loan taken out in Hattiesburg in November, 1994, LeBlanc took out a loan in Hattiesburg in July, 1994,  and Hudson's two loans occurred in Greenwood prior to June 1994 and in June 1994.   These loans had varying interest rates. On Wanda's first loan, she had no paper work and did not know the interest rate. Wanda and Esau's joint loan had a 20.99% interest rate.   LeBlanc and Hudson both had a 27.52% interest rate.   The loan transactions also occurred in various branches and locations.  Wanda's first loan occurred at her home in Greene County, Wanda and Esau's joint loan occurred in Forrest County.   LeBlanc's loan transaction occurred in Forrest County.   Hudson's loan transactions occurred in Leflore County. The loan officers were different in each case.   On Wanda's first loan it appears that there was no loan officer. Wanda and Esau's joint loan officer was at best described as a man.   LeBlanc stated that a

---

[5]  Esau and Wanda did take out one joint loan together in Hattiesburg.  However, Wanda allegedly took out a separate loan by herself in Leakesville on a separate occasion.

woman assisted her in the loan transaction. Hudson stated that she dealt with a man in both her loan transactions but she was unsure if they were the same person.

¶34. The Plaintiffs also differed on various other aspects of the case. Some Plaintiffs did not remember if the loan officers explained the available insurance, while Hudson specifically remembered discussing insurance with her loan officer. Each Plaintiff gave different items as collateral for the loan. None of the Plantiffs went to a doctor for any ailment in connection with the loan transactions. However, each Plaintiff complained of different problems. Wanda was worried and had sleepless nights, Esau had sleepless nights, LeBlanc had no mental anguish, and Hudson was simply angered by the situation. Also each Plaintiff had a different idea of what wrongful actions they believed Commercial Credit committed.

¶35. Based on the differing nature of each Plaintiff's case and this Court's holding in *Armond* and its progeny, the Plaintiffs failed to meet M.R.C.P. 20 same transaction and occurrence test. Three of the four Plaintiffs deposed stated that they did not even remember if a Commercial Credit employee discussed the insurance premiums. Also, the vague description of the loan transaction employees suggests that each Plaintiff had a different loan officer. Without any recall of an alleged fraud or misrepresentation by Commercial Credit, the question of a common misrepresentation is shaky at best. This Court finds that the trial court abused its discretion by joining these four diverse Plaintiffs and the Defendants in the Jones County action. This Court shall reverse and remand the case for severance of the cases

16

of all other Plaintiffs[6] cases from Lockett's Jones County action. Furthermore, the cases are severed to be transferred to the proper venues.

## CONCLUSION

¶36. For the above reasons, this Court finds that the trial court abused its discretion by denying the motion to sever and transfer venue. Therefore, the circuit court's order denying the motion to sever and transfer venue is reversed, and this case is remanded with directions that the circuit court sever the cases of Esau and Wanda Singleton, Tina LeBlanc, and Debra Hudson and transfer venue of those severed cases to the appropriate jurisdiction where each Plaintiff could have brought his or her claim without reliance on an improperly joined plaintiff.

¶37. **REVERSED AND REMANDED**.

**SMITH, C.J., WALLER AND COBB, P.JJ., CARLSON AND DICKINSON, JJ., CONCUR. GRAVES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. DIAZ AND RANDOLPH, JJ., NOT PARTICIPATING.**

---

[6] Wanda and Esau had a joint loan transaction in Forrest County, and this should be treated as one action.